UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY JAMES BURNS,<br><br>　　　　　　　Movant,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Respondent. | 4:22-CV-04036-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on the *pro se* motion of Timothy James Burns to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Pending is a motion by the United States ("government") to dismiss Mr. Burns' motion without holding an evidentiary hearing.  See Docket No. 17.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 57.11.

**FACTS**

The government recites the facts laid out by the court of appeals in its opinion affirming Mr. Burns' conviction and sentence.  Docket No. 17 at

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number.  Documents from Mr. Burns' underlying criminal case, United States v. Timothy Burns, 4:18-CR-40001-KES-2 (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

pp. 2-4.  Mr. Burns does not object.  Docket No. 19.  Therefore, the court starts with the Eighth Circuit's factual statement.

> Tobias Ritesman operated Ritesman Enterprises, Inc., which, in turn, was the parent company of Global Aquaponics, Inc., and South Dakota Food Security, LLC (SDFS).  Global and SDFS purportedly intended to build an aquaponics facility worth $11 million.[2]  Global was to own 51 percent of the facility and contribute $5.6 million to the project.  SDFS was to own 49 percent of the facility and contribute $5.4 million to the project. SDFS planned to raise its portion by selling shares.  Thus, it created a private placement memorandum, which detailed the purported project and investment opportunities for potential investors.
>
> Burns entered the picture as Global's chief operating officer and the general contractor for construction on the aquaponics facility. Burns hired two people, Jeremiah Charlson and Gregg Selberg, to find investors for SDFS to accumulate SDFS's $5.4 million contribution.  Burns instructed Charlson and Selberg to use the private placement memorandum in their presentations to investors.  Burns also gave Charlson and Selberg additional information not included in the private placement memorandum to tell investors.  For example, Burns told Charlson and Selberg that Global already had its $5.6 million contribution either on hand or in assets; it had purchased land for the facility; it had secured contracts to sell fish and produce; and the project had a funded bond from the State of South Dakota.  But none of these representations were true.  Defrauded investors later testified they relied on these statements when deciding to invest.
>
> Burns operated other unrelated businesses.  Burns's other businesses experienced financial troubles during the time he promoted Global and SDFS.  Thus, Burns took investor funds intended for SDFS and used them to cover expenses related to his other businesses.  Burns or his bookkeeper, Jackie Voelker, would transfer the money from SDFS's or Global's accounts to Burns's other businesses.

---

[2] Aquaponics combines aquaculture (raising and breeding aquatic animals) and hydroponics (growing plants without soil), using the aquatic animals to fertilize water for the plants and the plants to purify it for the aquatic animals. *Aquaponics*, Oxford English Dictionary (3d ed. 2012).

Charlson and Selberg eventually became suspicious of Burns. They noticed Burns was visibly stressed and would offer them double commission if they got a new investor within a day. During this time, they also saw Burns looking at negative bank accounts for SDFS. The company's apparent insolvency concerned them given their successful efforts to secure investors. Charlson and Selberg knew they had raised $200,000 to $300,000 for SDFS and been told Global had $5.6 million ready. So Charlson and Selberg discussed their concerns with Voelker. Voelker informed the two that SDFS's bank account was empty. The three decided to meet with Ritesman, the supposed originator of the project. Ritesman replied to their concerns by saying he would talk to Burns. Then, Charlson and Selberg decided to confront Burns directly. Burns claimed that he was entitled to a $1 million down payment as general contractor and that the transfers were simply advances for that sum. No one, however, had heard about or seen a contract for the purported down payment. Burns later showed them a contract addressing the down payment. Burns had drafted the contract himself and signed it as the chief operating officer of Global and as president of one of his other businesses.

After the confrontation, the scheme unraveled. SDFS filed a statement of dissociation from Burns. And several months later, the Federal Bureau of Investigation (FBI) interviewed Burns for his involvement with the scheme.

After the FBI investigation, a grand jury indicted Burns and Ritesman for wire fraud under 18 U.S.C. § 1343. Ritesman pleaded guilty. Burns went to trial. At trial, following the close of the evidence, the district court gave an actual-knowledge and a willful-blindness jury instruction for the intent element. It also gave the remainder of the wire-fraud instruction. Burns's counsel objected to the instruction, arguing it constructively amended or varied from the indictment to an impermissible degree. The district court overruled the objection, concluding that the wire-fraud jury instruction did not constructively amend the indictment or constitute a variance.

United States v. Burns, 990 F.3d 622, 625 (8th Cir. 2021).

On appeal, Mr. Burns argued, among other things, that the district court's willful blindness jury instruction was improper. Id. The Eighth Circuit held that the district court had not abused its discretion by instructing the jury

3

on willful blindness.  Id. at 628-29.  The court noted that a willful blindness instruction was relevant because Mr. Burns "assert[ed] a lack of guilty knowledge in the face of immense evidence supporting an inference of deliberate indifference."  Id. at 628 (quoting United States v. Atkins, 881 F.3d 621, 627 (8th Cir. 2018)).

Mr. Burns filed this motion under 28 U.S.C. § 2255 on March 7, 2022, when he placed it in the mail.  Docket No. 1.  The motion raises three claims for relief.  They are:

> 1.    "Counsel was ineffective by not presenting an additional jury instruction to modify the willful blindness instruction asking the jury to decide whether defendant is to be found guilty on the grounds of specific intent or on the grounds of willful blindness, prejudicing defendant."  Docket No. 1 at p. 4.  Mr. Burns asserts a similar claim of ineffective assistance against his appellate lawyer.  Id.

> 2.    "Counsel was ineffective at sentencing by not researching or investigating evidence and submittals, not properly objecting to the PSR, and not presenting a due process violation arguement [sic] to the Court, thus prejudicing defendant at sentencing.  Id. at p. 5.

> 3.    "Counsel was ineffective by [not] properly impeaching government's key witness, Gregg Selberg, or raising a prosecutorial misconduct claim, prejudicing defendant."  Id. at p. 7.

The court ordered Mr. Burns' trial attorney, Michael Butler, to submit an affidavit addressing Mr. Burns' claim of ineffective assistance.  Docket No. 9.  Mr. Butler submitted his affidavit, Docket No. 15, and the government now moves to dismiss Mr. Burns' habeas motion, Docket No. 17.  Mr. Burns responded.  Docket No. 19.

**DISCUSSION**

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343.  Before the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner "claiming the right to be released" to "vacate, set aside or correct" a federal sentence under specific grounds.  See 28 U.S.C. § 2255(a) ("upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.").  When a claim for relief is *not* based on a violation of a Constitutional or federal statutory right or regarding a lack of

Case 4:22-cv-04036-KES    Document 20    Filed 09/09/22    Page 6 of 34 PageID #: 77

jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be appropriate when a movant is prejudiced by a court's error).

Generally, petitioners are precluded from asserting claims under § 2255 that they failed to raise on direct appeal. United States v. Darden, 915 F.3d 579, 586 (8th Cir. 2019) (citations omitted); United States v. Frady, 456 U.S. 152, 167-68 (1982). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default. Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 6 F.4th 764, 776 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (citations omitted) ("[I]neffective assistance of counsel [claims] are generally not cognizable on direct appeal" and "may be heard only if a miscarriage of justice would otherwise result, . . . or if the district court has developed a record on the issues.").  Therefore, no procedural default analysis is required before examining Mr. Burns' claims of constitutionally deficient counsel.

## B.    Mr. Burns' Motion Is Timely

There is a one-year statute of limitations for filing a § 2255 motion which began to run in Mr. Burns' case at the time his conviction and judgment became final.  See 28 U.S.C. § 2255(f).  The Eighth Circuit decided Mr. Burns' case on March 8, 2021.  See United States v. Burns, 990 F.3d 622 (8th Cir. 2021).  His conviction became final when the time to file a petition for writ of certiorari to the United States Supreme Court expired, which in his case was 150 days after the appellate court issued its decision.  See Miscellaneous Supreme Court Order 589 (extending the deadline for petitions for writ of certiorari due on or after March 19, 2020, from 90 to 150 days) and Miscellaneous Supreme Court Order 594 (rescinding Order 589 as to lower court judgments issued on or after July 19, 2021).  Therefore, Mr. Burns' conviction became final on August 5, 2021, when the time to file a petition for

7

writ of certiorari expired.  Mr. Burns had until August 5, 2022, to file his

§ 2255 motion, and he timely filed his motion by mailing it on March 7, 2022.

See Moore v. United States, 173 F.3d 1131, 1135 (8th Cir. 1999) (applying the

mailbox rule to § 2255 motions).

### C.    Mr. Burns' Ineffective Assistance of Counsel Claims

Each of Mr. Burns' three grounds for habeas relief allege Sixth

Amendment ineffective assistance of counsel related to his trial and appellate

attorneys.

### 1.    Standard Applicable to Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a

criminal defendant with the right to assistance of counsel.  U.S. Const.

amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the

right to the effective assistance of counsel.' "  Strickland v. Washington, 466

U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14

(1970)).  Strickland is the benchmark case for determining whether "counsel's

assistance was so defective as to" violate a criminal defendant's Sixth

Amendment rights and "require reversal of a conviction."  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of

counsel's assistance, the defendant must show that counsel's representation

fell below an objective standard of reasonableness."  Id. at 687-88.  The

defendant must also show that counsel's unreasonable errors or deficiencies

prejudiced the defense and affected the judgment.  Id. at 691-92.  The

defendant must show "there is a reasonable probability that, absent the errors,

the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In sum, a defendant must satisfy a two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)). Courts may address deficient performance and prejudice in any order, and courts need not "address both components . . . if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. See Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). " 'American Bar Association standards and the like' are

'only guides' to what reasonableness [of counsel's conduct] means, not its definition." Id. (quoting Strickland, 466 U.S. at 688). "[T]he reasonableness of counsel's challenged conduct [must be judged] on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690; see also Rompilla v. Beard, 545 U.S. 374, 381 (2005) (emphasizing that "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made."; Bell v. Cone, 535 U.S. 685, 698 (2002), (reiterating that "every effort [must] be made . . . to evaluate the conduct from counsel's perspective at the time.").

The Supreme Court distinguishes between those cases "in which the new evidence 'would barely have altered the sentencing profile presented to the sentencing judge,' " and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009) (quoting Strickland, 466 U.S. at 700). In assessing the prejudice prong, courts should consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." Id. at 41 (internal quotation omitted, cleaned up). It is not necessary for the movant to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quotation omitted). "Judicial scrutiny of counsel's performance must be highly deferential" with "a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

### 2.    The Willful Blindness Instruction

Mr. Burns asserts counsel was ineffective for failing to propose "an additional jury instruction to modify the willful blindness instructions asking the jury to decide whether defendant is to be found guilty on the grounds of specific intent or on the grounds of willful blindness" there by prejudicing him. Docket No. 1 p. 4. Mr. Burns claims that both trial and appellate counsel "did not research or investigate the issues related with willful blindness jury instruction." Id. Mr. Burns states in his motion that "[c]ounsel was unprepared to such an extent to even recognize the Judge erred" when quoting case law that established the willful blindness instruction. Id.

In Mr. Burns' direct appeal, the Eighth Circuit affirmed that the willful blindness instruction was proper. Burns, 990 F.3d at 628-29. The court held, "[e]ven if the jury believed [Burns'] implausible explanation that he had no knowledge of the criminal activity . . . ,'there was sufficient evidence that he deliberately turned a blind eye to . . . clearly illicit activity to warrant' a willful blindness instruction." Id. (citing United States v. Atkins, 881 F.3d 621, 627 (8th Cir. 2018).

The question before this court in the habeas proceeding is whether another instruction clarifying the proper willful blindness instruction was warranted under the circumstances. Outside the presence and hearing of the jury, the district court judge met with Mr. Burn's counsel, Michael Butler, and

counsel for the government to discuss the final jury instructions.  CR Docket No. 103 at p. 2.  Mr. Butler objected to the willful blindness jury instruction, stating, "I do not believe the government has put on evidence that would support the giving of that instruction." Id. at p. 8.  A discussion on the willful blindness instruction and case law followed.  Id.  The trial transcript attributes this statement to the court:

> The U.S. Supreme Court found in Global-Tech Appliances v. SEB S.A. at 131 S.Ct., page 2060, —it's from 2011—that the willful blindness instruction can be given if there are two basic requirements that are met.  The defendant must *objectively* believe that there's a high probability that a fact exists.  And two, the defendant must take deliberate actions to avoid learning of that fact.

CR Docket No. 103 at p. 10 (emphasis added).

The Supreme Court's actual holding in Global-Tech refers to *subjective*, not *objective*, belief for the first requirement of the willful blindness instruction. See Global-Tech, 563 U.S. 754, 769 (2011).  The doctrine of willful blindness includes two basic requirements: "(1) The defendant must *subjectively* believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Id. (emphasis added).

The government provided the court with examples of submitted evidence that would validate the willful blindness instruction under the Global-Tech rule.  CR Docket No. 103 at p. 10-11.  Mr. Butler disagreed with the government's application of the evidence to justify the willful blindness instruction.  Id. at p. 11.  The court concluded that "it's a jury question as to whether [Burns] deliberately avoided learning of [the facts], in essence, sticking

his head in the stand." Id. at p. 12. The court ultimately overruled Mr. Butler's objection and gave the willful blindness jury instruction. Id. at p. 13.

The apparent misquote by the court, Mr. Burns claims under his first ground, "allowed the jury to decide guilt to two separate theories," thereby undermining the unanimity of the jury verdict, and prejudicing him. Docket No. 1 p. 4. Mr. Burns clarifies in his response in opposition to the government's motion that he believed the court's jury instructions allowed some jurors to find he acted knowingly, and some jurors to find he acted with willful blindness, thus giving rise to a nonunanimous verdict. Docket No. 19 at p. 2. Mr. Burns believes that Mr. Butler should have asked for an additional instruction directing the jury to find him unanimously guilty of willful blindness *or* unanimously guilty of acting knowingly.[3] Id. This court holds that such an addition to the jury instructions was unnecessary, and its absence did not violate Mr. Burns' Sixth Amendment right.

A jury instruction, taken as a whole and viewed in light of the evidence and applicable law, must fairly and adequately reflect the issues in the case. Preston v. United States, 312 F.3d 959, 961 (8th Cir. 2002). The element required to sustain a conviction for wire fraud under 18 U.S.C. §1343 is intent

---

[3] In his petition, Mr. Burns contrasted the concepts of "specific intent" and "willful blindness." Docket No. 1 at p. 4. In his brief in opposition to the government's motion to dismiss, he contrasted the concepts of "knowingly" and "willful blindness," arguing that the government misconstrued his claim in his petition. Docket No. 19 at p. 2. Whichever argument Mr. Burns is in fact making, both fail to entitle Mr. Burns to relief.

to defraud.  Burns, 990 F.3d at 627 (quoting United States v. Roberts, 881
F.3d 1049, 1052 (8th Cir. 2018)).  A jury instruction defining intent to defraud
as "to act *knowingly* and with the intent to deceive someone for the purpose of
bringing about some financial gain to oneself or another to the detriment of
another person" is in accordance with Eighth Circuit law.  United States v.
Thomas, 791 F.3d 889, 893 (8th Cir. 2015) (emphasis added).

Willful blindness is a limited exception to the requirement that actual
knowledge be proved beyond a reasonable doubt.  Global-Tech, 563 U.S. at
768.  Thus, contrary to Mr. Burns' apparent understanding, willful blindness is
not a concept in opposition to the concept of acting knowingly; instead, it is a
subset of "knowingly."  It provides an alternate basis for the government to
satisfy the element of a "knowing" violation. See United States v. Lalley, 257
F.3d 751, 755 (8th Cir. 2001) (quotation and citation omitted) (holding, in the
context of the money-laundering statute, that "Congress intended the 'knowing'
scienter requirements [of the statute] to be construed, like existing 'knowing'
scienter requirements, to include instances of 'willful blindness.' ").  Under the
willful blindness instruction, a defendant is willfully blind who takes deliberate
actions to avoid confirming a high probability of wrongdoing and who can
almost be said to have actually known the critical facts.  Id.  The jury
instructions related to willful blindness presented at Mr. Burns trial were as
follows:

**Instruction No. 3 - Wire Fraud**

*One*, that Burns voluntarily and intentionally devised, made up, or
participated in a scheme to defraud, or devised or participated in a

14

scheme to obtain money from another by means of material false representations or promises. . . .

*Two*, that Burns did so with the intent to defraud. . . .

To act with "intent to defraud" means to act *knowingly* and with the intent to deceive someone for the purpose of causing some financial loss or loss of property to another or bringing about some financial gain to oneself of another to the detriment of a third party.

**Instruction No. 6 – Willful Blindness**

The government may prove that Burns acted "knowingly" by proving, beyond a reasonable doubt, that Burns deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond a reasonable doubt of an intent of Burns to avoid knowledge or enlightenment would permit the jury to find knowledge. Stated another way, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact. A willfully blind defendant is one who takes deliberate action to avoid confirming a high probability of wrongdoing.

It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence.

You may not conclude that Burns had knowledge, however, from proof of mistake, negligence, carelessness, recklessness, or a belief in an inaccurate position.

CR Docket No. 93 pp. 3-4, 12.

Mr. Burns has failed to show evidence that the jury could have decided his case on split theories of acting knowingly and willful blindness. The element required to sustain a conviction for wire fraud is intent to defraud, which—as the court instructed—required proof that Mr. Burns "acted knowingly." Burns, 990 F.3d at 630 (quoting Thomas, 877 F.3d at 1079). The willful blindness instruction as presented to the jury, appropriately expands

15

the definition of "knowingly" to include Mr. Burns' "deliberately clos[ing] his eyes to what would otherwise have been obvious to him."  CR Docket No. 93 p. 12.  As the Eighth Circuit concluded, the jury could find that the government satisfied the intent element if either Mr. Burns had actual knowledge or was intentionally ignorant of the criminal conduct underlying the offenses of his conviction.  <u>Burns</u>, 990 F.3d at 627.

Mr. Burns further argues that a question proposed during jury deliberations is evidence that the jury was split on the intent theories.  This court finds that the proposed question is not sufficient evidence that the jury was considering multiple theories of intent as Mr. Burns claims.  Outside the presence and hearing of the jury, counsel and the court addressed the following jury question: "Regarding Element 1, would willful blindness come to bare [sic] that.  Would it satisfy Element 1 if we are otherwise uncertain?"[4] CR Docket No. 94.

The court proposed this answer to the jury: "The government can prove that Burns acted 'knowingly' regarding any element by proving, beyond a reasonable doubt, that Burns acted with willful blindness as fully described in Final Instruction No. 6.  Willful blindness applies any time you need to find that Burns acted knowingly."  CR Docket No. 95.  Mr. Butler objected to the inclusion of the second statement.  The court agreed stating, "I think Mr. Butler is correct with regard to the last sentence . . . that willful

---

[4] The jury question and answer were under seal in the CR, however the government disclosed the contents of the question and answer in their publicly filed brief.  Docket No. 18 p. 10.

16

blindness applies any time . . . that broadens the jury's findings." <u>Id.</u> The final answer to the jury's question was as follows:

> The government can prove that Burns acted 'knowingly' regarding any element by proving, beyond a reasonable doubt, that Burns acted with willful blindness as fully described in Final Instruction Number 6.

> This instruction should be taken together with the instructions I previously gave you. The instructions must be considered as a whole.

CR Docket 186-4 p. 82.

There is no indication in the record that the jury verdict was not unanimous. <u>See</u> <u>Burns</u>, 990 F.3d at 630 (noting the trial court told the jury it needed to reach a unanimous finding, the jury instructions specified the jury should reach a unanimous verdict, the verdict form stated that the jury found unanimously, and the trial court asked about the verdict's unanimity before announcing the guilty verdict). Courts presume the jury followed the trial court's instructions. <u>See</u> <u>Thomas</u>, 877 F.3d at 1079. "[T]he mere fact that . . . an instruction could conceivably permit a jury to reach a nonunanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict." <u>United States v. Hiland</u>, 909 F.2d 1114, 1140 (8th Cir. 1990) (quoting <u>Berrisford v. Wood</u>, 826 F.2d 747, 754 (8th Cir. 1987)).

Mr. Burns has failed to rebut the presumption that Mr. Butler's decision not to propose an additional instruction was reasonably competent representation. <u>See</u> <u>Strickland</u>, 466 U.S. at 688-89. Mr. Butler objected to the willful blindness instruction at trial. Counsel addressed the question from the

17

jury by limiting the definition of willful blindness to the published jury instructions. Any other clarification regarding the jury instructions would likely have confused rather than aided the jury. Further, without any indication in the record that the jury's verdict was not unanimous, Mr. Burns has not shown that he was prejudiced by Mr. Butler's alleged failure to offer an additional jury instruction. Id.

The court notes that the challenged misquote (objective vs. subjective) occurred outside the presence of the jury. The jury never heard the misquote and could not have been swayed by it. Second, the willful blindness instruction given to the jury, CR Docket No. 93 at p. 13,[5] reflects an accurate statement of the law as it requires subjective, not objective, belief, which follows the Global-Tech rule.

To the extent Mr. Burns raises this claim as to appellate counsel, he has not shown prejudice. His attorney on appeal argued that the trial court erred in giving the willful blindness instruction and should have, *sua sponte*, given an explicit unanimity instruction. Burns, 990 F.3d at 628-29, 630-31. He has not shown that, had counsel framed the issue slightly differently on appeal—e.g., by alleging that the district court erred when quoting Global-Tech or should have given an instruction clarifying the difference between specific intent and willful blindness—there is any probability of a different outcome.

---

[5] Citations to the final jury instructions refer to the page numbers affixed to the document by the court's electronic docketing system, CM/ECF, not to the numbers printed at the bottom of the page.

See <u>Porter</u>, 558 U.S. at 44.  Therefore, with no showing of prejudice, Mr. Burns'

claim as to appellate counsel without merit.

This magistrate judge respectfully recommends granting the

government's motion to dismiss this claim because there has been no showing

of deficient performance or prejudice.

### 3.    Ineffective Assistance at Sentencing

Mr. Burns asserts "counsel was ineffective by not researching or

investigating evidence and submittals, not properly objecting to the PSR, and

not presenting a due process violation argument [sic] to the Court, thus

prejudicing [Burns] at sentencing." Docket No. 1 p. 5.

### a.    Failing to Present Evidence

Mr. Burns claims that at his sentencing, Mr. Butler failed to present five

reference letters and failed to acquire two victim statements all which

Mr. Burns believed would have shown the court his ability to pay restitution.

<u>Id.</u>  Although Mr. Burns does not identify specific persons in his habeas

petition, in his response in opposition he asserts counsel should have obtained

letters from:  Bill Sutton, Dean Krogman, Dave Kosbau, Cody Bozied, Brent

Anderson, Matt Kurtenbach, and Sheriff Marty Stanwich.

The court notes that counsel *did* obtain letters of support from the latter

four persons named by Mr. Burns.  <u>See</u> CR Docket Nos. 138 (Sherriff

Stanwich); 141 (Matt Kurtenbach); 145 (Cody Bozied); and 162 (Brent

Anderson).  Also, Dave Kosbau submitted a victim impact statement indicating

that he believed Mr. Burns had "good intentions" but was misled about

19

finances. Docket No. 107 at p. 1. Mr. Burns does not submit affidavits or other evidence that the other two persons (Bill Sutton and Dean Krogman) would have been willing to submit letters on his behalf or what they would have been willing to say in those letters. Thus, from the inception, much of Mr. Burns' claim is affirmatively refuted by the record herein.

Courts refer to the United States Sentencing Guidelines[6] (USSG), as advisory authority in sentencing. See United States v. Booker, 543 U.S. 220, 245 (2005) (a sentencing court must consider USSG ranges, however a court may tailor the sentence given other statutory concerns as well). Restitution is a separate consideration from imprisonment in sentencing proceedings. United States v. Carruth, 418 F.3d 900, 904 (8th Cir. 2005); 18 § U.S.C. 363A; USSG § 5E1.1. The purpose of restitution is not to punish the defendant, rather to compensate victims of crime. United States v. Crawford, 115 F.3d 1397, 1403 (8th Cir. 1997). The sentencing court shall consider "the need to provide restitution to any victims of the offense" when determining imprisonment. 18 U.S.C. § 3553(a)(7).

The presentence investigation report (PSR) prepared for Mr. Burns' sentencing hearing calculated Mr. Burns' advisory sentencing range under the USSG. CR Docket No. 174. Based on a total offense level of 25 and a criminal history category of I, the advisory USSG range for Mr. Burns' imprisonment

---

[6] The USSG is a tool for calculating sentencing based on various factors including, but not limited to the type of offense, the defendant's role in the offense, the number of victims impacted by defendant's actions, and the defendant's criminal history. Payne v. Tennessee, 501 U.S. 808, 820 (1991).

was 57 to 71 months.  Id. at p. 22.  Under the USSG and statutory provisions, restitution was to be ordered.  Id. at 24.

    Mr. Butler addressed Mr. Burns' habeas claim in his affidavit saying, "evidence was presented to the court that at least two persons were prepared to hire [Burns] . . . these two persons . . . declined to be identified.  Additionally, another letter was submitted to the court stating Burns could be hired to do business."[7]  Docket No. 15 p. 1.  Mr. Butler could not address Mr. Burns' specific allegation herein because Mr. Burns failed to identify the five authors of the letters and the two victims by name.[8]  Id. at p. 2; Docket No. 1 at p. 5. The record reveals that Mr. Butler submitted twenty-one letters on Mr. Burns' behalf before the sentencing hearing, at least four of which were from persons Mr. Burns asserts counsel should have solicited letters from.  CR Docket No. 132, 138, 141, 145, 153, 162, 164.

    Of those twenty-one letters, six members of the Brookings regional business community stated that they would hire Burns for future projects. "I am aware of his recent conviction, yet I do not hesitate to continue to do

_____

[7] Not only did counsel mention these potential business partners of Mr. Burns at sentencing, but Mr. Burns in his personal allocution to the court also mentioned them.  Like his counsel, Mr. Burns did not "name names" as he indicated to the court that the potential business partners did not want to be identified.  CR Docket No. 187 at pp. 109-10.

[8] As noted previously, Mr. Burns did not identify the persons he alleges should have been contacted to write letters of support in his habeas petition.  Docket No. 1 at p. 5.  It was from this document that Mr. Butler prepared his affidavit. Only after Mr. Butler's affidavit and the government's motion to dismiss was filed did Mr. Burns identify specific persons he asserts should have been contacted to submit letters.  Docket No. 19 at p. 3.

business with him." CR Docket No. 162. "I would not hesitate to work with him on future business projects. There are opportunities for him." CR Docket No. 153. "I am certainly aware of the current status of what Tim has been convicted of but wouldn't hesitate to bring him into my business if the correct opportunity arose." CR Docket No. 145. "I would not hesitate to hire Tim into my company as a project manager or developer." CR Docket No. 132 p. 16. "I would be willing to participate in following through to find several projects in our community that could use his Construction Expertise." CR Docket No. 132 p. 17. "I would not hesitate to work with his team to provide modular housing solutions to those in need if the opportunity presents itself." CR Docket No. 132 p. 20.

Mr. Burns' § 2255 allegation does not defeat the competency presumption under Strickland. See Wiggins v. Smith, 539 U.S. 510, 524 (2003) quoting 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed.1982) ("The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. . . . Investigation is essential to fulfillment of these functions."). Mr. Butler submitted a total of not seven, but twenty-one reference letters on Mr. Burns' behalf, six of which specifically addressed the need for the sentence imposed to afford Mr. Burn the opportunity to pay restitution.

Further, Mr. Burns cannot claim prejudice under Strickland. Mr. Burns has not shown that the two letters that were not included in the

22

bevy of letters submitted to the court would have had the possibility of changing the outcome at sentencing.  Most of the evidence Mr. Burns says should have been submitted *was* submitted.  Mr. Burns has not shown what the two letters that were not submitted would have stated.  The court assumes those two letters would have been merely cumulative of what was already before the court.

The government requested a sentence at the top of the advisory range. CR Docket No. 187 p. 126.  Mr. Butler requested a downward variance on behalf of Mr. Burns.  Id. at p. 123.  Mr. Burns was sentenced to 57 months for each of the five counts of wire fraud to be run concurrently.  Id. at p. 130.  This was at the bottom of Mr. Burns' USSG range.   Id.

Mr. Burns owed nearly half a million dollars in restitution; an amount that could not be quickly earned.  Id. at p. 129.   Mr. Burns' plea for leniency so that he could work to pay the restitution he owed likely rang hollow since he had made no effort to pay any amount prior to sentencing.  Id.  In addition, as the sentencing court noted, he owed $7 million for losses accrued in connection with a previous beef plant project in Aberdeen.  Id.  Mr. Burns' statement that if he could be given probation, he could quickly earn the money for the victims in this case probably seemed unrealistic to the court given the fact he also owed $7 million to others who stood in line before the victims in this case.  The court balanced the need for punishment with the needs of the victims as directed by 18 U.S.C. 3553(a).  See CR Docket No. 187 at pp. 129-30. Mr. Burns has failed to show that the court did not properly consider the need

for Mr. Burns to work and provide restitution or that counsel was ineffective for
failing to alter that balance.

### b.    Failing to Object to the Table in the PSR

Mr. Burns claims that Mr. Butler was ineffective for failing to object to
the PSR table[9] listing the number of victims and attributable losses to the
parties.  Docket No. 19 p. 3.  Firstly, the court notes that—as with a number of
other assertions made by Mr. Burns—this one is refuted by the record.
Mr. Butler did in fact object in writing and orally to the table in the
PSR—specifically to the inclusion of victims on the table who never testified
either at trial or at the sentencing hearing.  CR Docket No. 169 at p. 1;
CR Docket No. 187 at pp. 32-33, 78-79.  Nevertheless, the court examines the
substance of Mr. Burns' claim.

Where an objection to a PSR, if it had been made and sustained, yields
the same potential sentence under the USSG, a petitioner under § 2255 cannot
establish Strickland prejudice as a matter of law based on the petitioner's
lawyer's failure to lodge the objection.  See Montanye v. United States, 77 F.3d
226, 230-231 (8th Cir. 1996) (where the petitioner was sentenced to 360
months incarceration, and the USSG range was 360 months to life under the
PSR as written, but also the same range if the objection had been made and
sustained, petitioner could not show prejudice).  Cf. Sun Bear v. United States,
644 F.3d 700, 705 (8th Cir. 2011) (movant cannot state a claim under § 2255

---

[9] The table included in the PSR is contained under the Loss heading on page
15. The table lists every Global Aquaponics investor, their investment amount,
and the deposit accounts.  CR Docket No. 174 p. 15.

attacking district court's sentence where the sentence was within statutory limits and the same sentence could have been imposed even if the movant were granted the § 2255 relief he requests).

Where counsel failed to make objections to a PSR and it cannot be determined as a matter of law that those objections would not have affected the petitioner's sentence, a question of fact is created which requires an evidentiary hearing.  See West v. United States, 994 F.2d 510, 513 (8th Cir. 1993) (evidentiary hearing required on petitioner's § 2255 motion where petitioner alleged ineffective assistance of counsel for failure to object to PSR and it could not be determined from the record that the objections would have not affected the petitioner's sentence); United States v. Ford, 918 F.2d 1343, 1350 (8th Cir. 1990) (holding a defendant in direct appeal established ineffective assistance of counsel where counsel failed to object that the PSR did not give him credit for acceptance of responsibility and, had defendant received such credit, his sentencing range under the USSG would have been different).[10]

Mr. Butler made four separate objections to USSG enhancements in the PSR before Mr. Burns' sentencing hearing.  CR Docket No. 117.  None of these

---

[10] The court recognizes that Montanye, West, and Ford all pre-date the Court's decision in Booker, which made the USSG advisory only.  See United States v. Booker, 543 U.S. 220, 245 (2005).  However, even though the USSG are now only advisory, the sentencing court is still required to calculate a defendant's sentencing range under the USSG and give "serious consideration" to the USSG range before analyzing the factors under 18 U.S.C. § 3553.  Gall v. United States, 552 U.S. 38, 45 (2007).  Hence, this court concludes that the Montanye, West, and Ford cases remain viable precedent for collateral proceedings post-Booker.

objections specifically included the table.  Id.  Nor were there any objections to the underlying facts presented in the PSR before the sentencing court.  Id.  At the sentencing hearing, Mr. Butler incorrectly believed that the filed objections to the USSG enhancements preserved factual objections to the PSR. CR Docket No. 187 p. 34.  Mr. Butler did raise an objection to the table under paragraph 39 at sentencing.  Id. at p 33.  That objection was then taken up on the merits.

Mr. Burns was also not prejudiced by the court overruling Mr. Butler's objection to the inclusion of the table.  For purposes of offense level computations under USSG,

> [T]he Defendant is accountable for all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the Defendant; and in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the Defendant in concern with others, whether or not charged as conspiracy), all acts and omissions of others that were within furtherance or that criminal activity, and reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offence.

USSG §§ 1B1.3(A)(1), (B).

Mr. Butler objected to the number of victims represented by the table in the PSR—that out of the fourteen victims assigned to Mr. Burns, four did not appear and offer testimony at trial or at sentencing.  CR Docket No. 117; CR Docket No. 187 p. 89.  If requiring victims to appear and testify in court was the measure of the USSG's victim calculation, it may have prejudiced Mr. Burns, however there is no such requirement.  As the court stated, "There's no

requirement that each alleged victim has to appear here in court and testify. The court can rely on other evidence to show that the transactions fell within furtherance of the criminal activity or were reasonably foreseeable in connection with that criminal activity." CR Docket No. 187 p. 86; USSG § 1B1.3(A)(1).

Mr. Burns had signature authority to most of the accounts listed on the table, but more importantly, Mr. Burns was found guilty of five counts of wire fraud for an expansive scheme involving four separate bank accounts and many victims. CR Docket No. 187 pp. 32-33. The government presented sufficient evidence at trial that fourteen victims were appropriately attributed to Mr. Burns. Id. at pp. 91-92. The number of victims was used to determine Mr. Burns' sentencing range under the USSG. CR Docket No. 174 p. 16 (referencing USSG § 2B1.1(b)(2)(A)(i)). That Mr. Burns did not have exclusive control over some of these accounts is irrelevant to the calculation of his sentence under the USSG. USSG §§ 1B1.3(A)(1), (B); See United States v. Ross, 279 F.3d 600, 610 (8th Cir. 2002) (the Eighth Circuit held that orders of restitution may even exceed the wire transactions submitted to a jury if related to a broader scheme to defraud.). For restitution purposes, "[t]he district court must order restitution 'in the *full amount* of each victim's losses as determined by the court' and without consideration of the economic circumstances of the defendant." Ross, 279 F.3d at 609 (citing 18 U.S.C. § 3664(f)(1)(A)) (emphasis added). The loss calculation presented in the table specifies which amounts

are attributable to Burns and which amounts are attributable to Ritesman using bold and italic font.  CR Docket No. 174 p. 15.

Thus, Mr. Butler did not fail to object to the table as Mr. Burns claims, he did so at sentencing and presented subsequent arguments when the sentencing hearing reconvened.  Such actions do not overcome the competency presumption and the inclusion of the table did not affect the USSG calculation to prejudice Mr. Burns.

### c.    Failing to Raise a Due Process Violation

Mr. Burns claims that Mr. Butler failed to raise a due process violation as to the proceedings, thus prejudicing him.  Docket No. 1 p. 5.  Mr. Burns stated, "[i]n the co-defendant's sentence and judgment, [Mr. Burns] was listed as jointly responsible for restitution for several victims.  Consequently, [Mr. Burns] was responsible for several victims and several hundred thousand dollars of restitution BEFORE his sentence hearing."  Docket No. 19 pp. 4-5.

This court need not reach the merits of this claim.   Whatever the merits of Mr. Burns' due process challenge to his court-ordered restitution, a motion under § 2255 is not the correct vehicle by which to pursue it.  Dyab v. United States, 855 F.3d 919, 992 (8th Cir. 2017).  Section 2255(a) allows "[a] prisoner in custody . . . *claiming the right to be released*" to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (emphasis added).

 "Because a dispute about restitution does not involve a claim of a right to be released from custody, a prisoner cannot challenge the restitution portion

of his sentence under § 2255." <u>Shephard v. United States</u>, 735 F.3d 797, 798 (8th Cir. 2013) (*per curiam*); <u>United States v. Bernard</u>, 351 F.3d 360, 361 (8th Cir. 2003). Despite Mr. Burns raising a due process issue under the umbrella of an ineffective assistance of counsel claim, the result he seeks is a modification in his restitution sentence. So even if Mr. Burns could show that his due process rights were violated, he cannot obtain relief under § 2255. <u>See</u> <u>Shephard</u>, 735 F.3d at 798 (Sixth Amendment claim not cognizable under § 2255 where ineffectiveness of counsel allegedly affected amount of restitution); <u>Cunningham v. United States</u>, Nos. 1:14–CR–225 (LMB), 1:15–CV–1262 (LMB), 2015 WL 6160722, at *4 (E.D. Va. Oct. 20, 2015) ("Cunningham's alternative attempt to couch his restitution claims in the framework of ineffective assistance of counsel also does not merit collateral relief because '[n]on-cognizable claims do not morph into cognizable ones by osmosis.' ") (quoting <u>United States v. Thiele</u>, 314 F.3d 399, 402 (9th Cir. 2002)). Thus, without addressing the merits of Mr. Burns' due process claim, this court finds that Mr. Burns' claim cannot succeed under § 2255 and Eighth Circuit precedent.

### 4. Failure to Impeach Selberg

Mr. Burns claims that "counsel was ineffective by improperly impeaching [the] government's key witness, Gregg Selberg." Docket No. 1 p. 7. Mr. Burns states that Mr. Butler had received a phone call from Jesse Lee Boss before trial and that Mr. Boss gave Mr. Butler information about witness Gregg Selberg. <u>Id.</u> Mr. Boss supposedly told Mr. Butler that, "Selberg had been fired

from a sales job raising money for investment projects" and Selberg had made "the same claims about this project as he was making in defendant's case." Id.

When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and did not amount to ineffective assistance. Bell, 535 U.S. at 698; Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003). Whether or not to impeach a witness and how is a matter of trial strategy. See Morelos v. United States, 709 F.3d 1246, 1250 (8th Cir. 2013) (rejecting ineffective assistance claim containing general averments that counsel should have examined witnesses differently); United States v. Villalpando, 259 F.3d 934, 939 (8th Cir. 2001) ("[courts] generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). "A failure to impeach constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." Whitfield v. Bowersox, 324 F.3d 1009, 1018 (8th Cir.), vacated in part on other grounds by 343 F.3d 950, 950 (8th Cir. 2003).

At trial, Mr. Butler cross-examined Gregg Selberg on a variety of issues stemming from his work with Mr. Burns and Global Aquaponics, Inc. CR Docket No. 186-1 pp. 179-194. Mr. Butler addressed Mr. Burns' impeachment claim in his affidavit. "Defense counsel does not recall the specifics of this phone call. But, because this information may not have been utilized during cross examination, defense counsel assumes it was not as compelling as is assumed to be the case by Burns." Docket No. 15 p. 1.

Mr. Butler's decision whether to use information from the phone call to impeach Selberg falls within trial strategy. This court must defer to Mr. Butler's professional discretion. <u>Strickland</u>, 466 U.S. at 697. Competency is presumed under these circumstances.

The government asserts that Mr. Burns fails to "provid[e] sufficient information from which the court could conclude Burns has shown Selberg would have been impeached at all with this information. . . . Burns has come nowhere near demonstrating the jury would have had a reasonable doubt about Burns' guilt." Docket No. 18 pp. 19-20. This court agrees that Mr. Burns' claims of impeachable information on Selberg are speculative. Without more, Mr. Burns cannot prove prejudice. The evidence presented at trial was sufficient for the jury to find Mr. Burns guilty of five counts of wire fraud and did not depend solely on Selberg's testimony. Docket No. 18 p. 20. As the Eighth Circuit noted, in addition to Selberg (who was a salesman for Global Aquaponics), another Global Aquaponics salesman testified at trial as well as numerous victims. <u>Burns</u>, 990 F.3d at 625-26. Thus, tangential impeachment of Selberg does not hold out the possibility of changing the outcome at trial.

### 5.    Prosecutorial Misconduct

Mr. Burns claims that Mr. Butler's failure to investigate the allegations made by Mr. Boss about Mr. Selberg resulted in unchecked prosecutorial misconduct, thus prejudicing Mr. Burns. Docket No. 1 p. 7. Mr. Burns states that the information provided by Mr. Boss implicated the government's failure

to disclose information about Mr. Selberg to the defense.  Id.  Mr. Burns fails to state how he was prejudiced by Mr. Butler's actions.  Id.  The government responded that such a claim would be "procedurally defaulted."  Docket No. 18 p. 20 n.2.  While it is true that a claim for prosecutorial misconduct should have been raised on direct appeal lest it be waived, Mr. Burns presents the issue of prosecutorial misconduct under the auspices of a Sixth Amendment claim ineffective assistance of counsel.  See Darden, 915 F.3d at 586.  Such a claim is appropriately raised for the first time in a § 2255 action.  This court addresses the merits of Mr. Burns' claim.

Courts have found limited investigations into mitigating evidence to be reasonable.  See Strickland, 466 U.S. at 699, (concluding that counsel could "reasonably surmise . . . that character and psychological evidence would be of little help."); Burger v. Kemp, 483 U.S. 776, 794 (1987) (concluding counsel's limited investigation was reasonable because he interviewed all witnesses brought to his attention, discovering little that was helpful and much that was harmful).  Mr. Butler did not fail to investigate Mr. Boss' allegations. Mr. Butler spoke with Mr. Boss before trial, after which he determined how to proceed with Mr. Burns' case.  Mr. Burns claims that Mr. Boss contacted Mr. Butler and "shared information regarding impeaching information regarding Gregg Selberg."  Docket No. 19 p. 4.  Determinations of how to use such information amount to trial strategy.  In hindsight this court must defer to the strategy decisions of trial counsel.

Further, Mr. Burns has not shown prejudice by Mr. Butler's supposed failure to investigate and expose the supposed prosecutorial misconduct. As the government stated, "[Mr. Burns] has made no showing of how the prosecutor might have known about the information [on Selberg], or that it was withheld from the defense." Docket No. 18 p. 20 n. 2. Mr. Burns' allegations fail to demonstrate that a jury would have had reasonable doubt about his guilt had the information relayed by Mr. Boss been known by the jury. Id.

**D.    No Hearing Is Warranted.**

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. U.S., 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)). "A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

Mr. Burns' claims are rebutted by the record or, even if taken as true, do not warrant relief. Therefore, no evidentiary hearing is necessary.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 17], and dismissing Mr. Burns' petition [Docket No. 1] with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 9th day of September, 2022.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge